**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | :
 : 3:13-CR-102
 : |
| **v.** | :
 : (JUDGE MANNION) |
| **ZACHARAE LOWE,** | : |
| **Defendant** | : |

## MEMORANDUM

**I.  BACKGROUND**

On June 26, 2020, defendant Zacharae Lowe filed, *pro se*, an Emergency Motion for Compassionate Release/Reduction of Sentence under 18 U.S.C. §3582(c)(1)(A), and request for the court to modify his 151-month prison sentence to a term of home confinement due to the COVID-19 pandemic and the alleged "threat it poses to his safety." (Doc. 419). Lowe attached to his motion a copy of his home plan, his education plan, and his employment plan, as well as a transcript of the educational courses he has completed in prison. Lowe simultaneously filed a brief in support of his motion with an attached Exhibit. (Doc. 420). In particular, Lowe seeks the court to immediately release him from confinement in prison at FCI Allenwood, Low Security, located in White Deer, Pennsylvania, to home confinement in Pittston, Pennsylvania, due to his fear that he may contract the COVID-19 virus in prison. He alleges that social distancing is not possible in the prison

1

since he is housed in an "open-air dormitory like setting" with about 150 other inmates, in 3-man cubes, "in exceptionally close proximity to one another." Lowe also alleges that that there is insufficient testing being performed at the prison and minimal screening. He further alleges, without support, that COVID-19 is already present at Allenwood Complex and has "claimed two inmates lives." Lowe also alleges, again without support, that he "fits into a particular class of medically-compromised inmates who, if exposed to COVID-19 …, is at high risk to contract this potential lethal virus." As such, Lowe contends that "extraordinary and compelling" reasons warrant the immediate modification of his sentence to home confinement, or to time served, to protect him from contracting COVID-19.

In his motion, Lowe recognizes that §3582(c)(1)(A) requires him to exhaust his administrative remedies with the BOP by submitting a request to the Warden. Lowe states that he sent an email request to the Warden to be released to home confinement under the CARES Act, and that the Warden denied his request. Specifically, Lowe submitted a copy of his May 26, 2020 email request to Warden White in which he stated: "I would like to be released on Home Confinement due to the covi[d]-19 pandemic and in compliance with the recently passed [CARES] Act." The Warden responded to Lowe's request on May 28, 2020, stating that after a comprehensive review of Lowe's circumstances, and in accordance with the Attorney General's criteria in his memorandum issued pursuant to the CARES Act and under 18 U.S.C. §3624(c)(2), "you are not appropriate for home confinement

2

placement. You have not maintained 12 months of clear conduct", citing to Lowe's January 2020 disciplinary infraction for possessing a cell phone. (Doc. 420 at 5).

Further, despite his understanding of the statute, Lowe does not state that he appealed Warden White's denial of his request for release to home confinement under the CARES Act with the BOP.

Lowe contended that nothing else was required of him in terms of exhaustion. In any event, Lowe stated that further attempts to exhaust were futile since the BOP has determined that he is not eligible for relief and since any further requests would have "the exact same results", i.e., adverse decisions from the BOP. Lowe cited to cases in which he states that the courts have held that exhaustion was not mandatory. Thus, Lowe urges the court to consider the merits of his motion.

After the court directed the government to respond to Lowe's motion, it filed its brief in opposition, with Exhibits, on June 30, 2020. The government submitted Warden White's safety protocols he enacted at Allenwood Low due to COVID-19 and, also filed portions of Lowe's BOP medical records under Seal. (Docs. 423, 423-1 & 2, & 425).

On July 2, 2020, Lowe's youngest daughter, Nia Lowe-Shaffer, filed a letter with the court in support of Lowe's request for release stating that he has served "7-8 years" of his sentence and "his sentence should not be a death sentence" since he could die in prison due to COVID-19. (Doc. 427).

On July 28, 2020, Lowe filed a reply brief with attached Exhibits. (Doc. 430). Lowe did not initially submit any request to Warden White for Compassionate Release/Reduction in Sentence based on extraordinary or compelling circumstances due the COVID-19 pandemic, pursuant to BOP Program Statement 5050.50 and in accordance with 18 U.S.C. §3582(c)(1)(A), before he filed his instant motion. (*See* Doc. 423-2). However, in his reply brief, Lowe states that recently, on July 7, 2020, he filed a formal request to Warden White for Compassionate Release to home confinement, pursuant to BOP Program Statement 5050.50, due to the COVID-19 pandemic and the alleged failure of the prison to adhere to all of the CDC guidelines. (Doc. 430 at 6, 14).

On July 31, 2020, Lowe filed an amendment to his reply brief with an attached Exhibit, namely, a copy of Warden White's July 20, 2020 response to Lowe's July 7, 2020 Request for Compassionate Release/Reduction in Sentence, pursuant to BOP Program Statement 5050.50 and 18 U.S.C. §3582(c)(1)(A), based on extraordinary and compelling circumstances due the housing conditions in the prison and COVID-19. (Doc. 431). The Warden denied Lowe's request stating why Lowe did not meet the BOP's criteria and advised Lowe that if he was not satisfied with the response, he could appeal through the BOP administrative remedy process. (Doc. 431 at 2).

Lowe states that the Warden's response shows that he has exhausted his administrative remedies. He also states that by the time the court rules on his instant motion, 30 days will have passed since he submitted his July

7, 2020 request to the Warden. Lowe also states that "any further appeal [with the BOP] will render the same results making it futile." Thus, he again concludes that pursuing an appeal of the Warden's response to his request is "futile."

After considering Lowe's motion, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). To the extent Lowe is also seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[1]

## II.    DISCUSSION

Lowe seeks his immediate release from FCI Allenwood Low and requests the court to allow him to serve the remainder of his prison sentence in home confinement, or to modify his prison sentence to time served, stating that he is in danger of contracting the COVID-19 virus based upon the alleged conditions of the prison. Lowe has served only about 7 years of his

---

[1]Since Lowe is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act, which he references in his motion and brief, in addition to a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

5

151-month sentence. Lowe's halfway house eligibility date is September 15, 2023, and his projected release date is March 15, 2024. (Doc. 430 at 9). Lowe does not allege that he has any recognized medical conditions which may make him more vulnerable to suffer serious symptoms if he does contract COVID-19.[2] In fact, the government submitted two years of Lowe's BOP medical records and, as the government points out, "these records reflect that Defendant is a man in his late 30s [i.e., 38] in good health, with no history of respiratory illness or other significant or chronic conditions that render him particularly vulnerable to the virus."

The Memorandum from U.S. Attorney General William Barr regarding guidelines to the BOP for the implementation of the CARES Act, §12003(b)(2), and directing the BOP to identify suitable inmates for home confinement with COVID-19 risk factors is also referenced in this case. Thus, liberally construed, Lowe is deemed as claiming that he is the type of inmate who meets Barr's criteria for release to home confinement under the Act due to the COVID-19 pandemic.

---

[2]Since the court stated the background of Lowe's criminal case in its Memorandum denying his motion to reduce sentence under Amendment 782, (Doc. 413), and since the government states it in its brief, (Doc. 423 at 2), the court does not repeat it herein. Suffice to say that Lowe is currently serving a 151-month prison sentence that was imposed on him, as a career offender, on June 24, 2014, after he was convicted of a conspiracy to distribute and possession with intent to distribute in excess of 100 grams of heroin, in violation of 21 U.S.C. §846. The court also ordered Lowe to be on four years of supervised release.

As relief, Lowe requests the court to immediately release him from confinement at FCI Allenwood Low, where there are no positive cases of COVID-19 for staff and inmates as of July 28, 2020[3], to home confinement in Luzerne County for service of the remainder of his sentence.[4]

Initially, the government states that although Lowe sent an email to Warden White seeking release to home confinement under the CARES Act, it was not a request to the Warden for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

The government, (Doc. 423 at 12), then states:

When the Warden wrote back [to Lowe in response to his May 26, 2020 email], he did not deny [Lowe] compassionate release pursuant to §3582(c)(1)(A), but denied the requested release to home confinement, pursuant to 18 U.S.C. §3624(c)(2), as authorized by the Cares Act. The Government has confirmed, again through BOP counsel, that to this day [Lowe] has not even begun the administrative process by making an initial request for compassionate release to the

---

[3] The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. USP Allenwood and FCI Allenwood Medium also have no current positive cases of COVID-19 among inmates and one positive case of staff at USP. Also, each one of these institutions reported one staff had recovered from the virus. Also, Lowe incorrectly states that there were two inmate deaths from COVID-19 at Allenwood complex. (*See* Doc. 423 at 10-11).
Luzerne County, where Lowe is seeking to be released on home confinement, has 3,324 positive cases of COVID-19 and 183 deaths as of August 3, 2020. *See* Pa. Dept. of Health website.

[4] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro v. Finley, 2020 WL 2084960 (M.D.Pa. April 30, 2020), and since many of the measures are stated in the government's brief, (Doc. 423 at 2-9), and in its Exhibit, (Doc. 423-1), as well the BOP's websites cited, they are not repeated herein. *See also* BOP website at: www.bop.gov/coronavirus/index.jsp.

7

Warden, let alone entirely exhausted the administrative remedy. [citing Doc. 423-2].

Nor did Lowe's email request to the Warden for release to home confinement comport with the BOP's program statement concerning procedures for implementing 18 U.S.C. §3582, which requires certain information. *See* BOP Program Statement §571.61(a)(1) and (2) (Initiation of request – extraordinary or compelling circumstances).

The Program Statement, in relevant part, provides:

§571.61 Initiation of request – extraordinary or compelling circumstances.

a. A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:

(1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.

(2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

Further, under §571.63, if the Warden denies an inmate's request, "the inmate will receive written notice and a statement of reasons for the denial",

and "[t]he inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542,subpart B)."

No doubt that Lowe's email request to the Warden did not contain the minimum information required to consider it as a §3582(c)(1)(A) request for compassionate release since it failed to identify the specific medical condition or circumstances making him more vulnerable despite the BOP's COVID-19 protocols and it did not describe a release plan covering such issues as his residence upon release, his means of supporting himself, and where he will receive medical treatment.

Also, Lowe's May 26, 2020 email request specifically asked only to be "released to home confinement" in compliance with the CARES Act, and it did not reference 18 U.S.C. §3582(c)(1)(A). Thus, Lowe's email request did not comply with the above stated minimum requirements for a request for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

As such, the government contends that since Lowe has not submitted an administrative remedy request for compassionate release and he did not file a request for a sentence reduction in conformity with the BOP program statement requirements for a compassionate release request, his motion should be dismissed without prejudice due to his failure to have exhausted BOP administrative remedies.

However, Lowe subsequently submitted a request for compassionate release to the Warden, pursuant to §3582(c)(1)(A), on July 7, 2020. On July 20, 2020, the Warden timely responded to his request and denied it, and

9

advised Lowe that he may appeal through the BOP administrative remedy process. (Doc. 431 at 2). However, Lowe contends that exhaustion would be futile in his case and that it should be excused.

The court finds that Lowe's motion is premature and that he must first appeal the response to his request for compassionate release from Warden White pursuant to §3582(c)(1)(A), and he must fully exhaust his administrative remedies with the BOP.

In United States v. Williams, 2020 WL 2748287, *2 (E.D.Tenn. May 27, 2020), the court explained the process:

> The BOP has outlined the administrative appeal process. See Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582 and 4205(g) (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The BOP Program Statement explains that a prisoner seeking a compassionate release must first file a request with the warden asking the BOP to move for compassionate release on the prisoner's behalf. *See id.* at 3 (citing 28 C.F.R. §571.61). If that request is denied, the prisoner must appeal the denial through the BOP's Administrative Remedy Procedure. *See id.* at 15 (citing 28 C.F.R. §571.63).

Nor can the court waive §3582(c)(1)(A)'s exhaustion requirement or excuse it as futile, as Lowe contends. *See* United States v. Bolze, --- F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tenn. May 13, 2020) (Court held that it could not waive §3582(c)(1)(A)'s exhaustion requirement, since it is "a jurisdictional threshold to consideration of defendant's motion", stating that "[w]hen a statutory bar to suit is jurisdictional, 'a litigant's failure to comply

10

with the bar deprives a court of all authority to hear a case.'") (quoting United States v. Wong, 575 U.S. 402, 409, 135 S.Ct. 1625 (2015)).

Thus, even though Lowe's July 7, 2020 request appears to be a proper request for compassionate release to the Warden pursuant to §3582(c)(1)(A), and it was denied by the Warden, Lowe must administratively appeal the denial of his request by the Warden since it was within the 30-day requirement. *See also* Williams, 2020 WL 2748287, *2 (although defendant submitted a request for compassionate release to the warden and it was denied, court held that "[t]his may have satisfied the first step in the administrative process", but since defendant "[did] not state whether he appealed that denial through the BOP administrative process", "it does not appear that [defendant] 'has fully exhausted all administrative rights to appeal … [under 18 U.S.C. §3582(c)(1)(A)].").

In short, Lowe must exhaust all of his BOP administrative remedies with respect to the Warden's July 20, 2020 response to his July 7, 2020 request. *See* United States v. Early, 2020 WL 2572276 (W.D.Pa. May 21, 2020).

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper

method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

In Early, 2020 WL 2572276, *3, the court stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, *id.*, also held that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id.* (quoting Raia, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Also, this court has found that a defendant has not exhausted his administrative remedies simply because 30 days has expired since the warden received defendant's request for compassionate release when the warden denies defendant's request within the time frame provided for in the First Step Act. *See* United States v. Greenlove, 2020 WL 3547069.

As the court in Early, *id.* at *3, explained:

12

Courts have interpreted the statue to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* United States v. Nance, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, United States v. Bolino, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, United States v. Bevans-Silva, 2020 WL 2475079 (S.D. Ga. May 13, 2020); United States v. Samuels, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); United States v. McCallister, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); United States v. Rodriguez, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); United States v. Mattingley, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); United States v. Keith, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

Lowe has not exhausted his BOP administrative remedies prior to his instant filing. Since the Warden timely denied Lowe's July 7, 2020 request for release to home confinement, Lowe must file an appeal of the response with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, Lowe must appeal that decision to the BOP

General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id.* The appeal to the General Counsel is the final administrative appeal in the process. *See* Early, 2020 WL 2572276, *2 (citing 28 C.F.R. §542.15(a)).

Lowe has clearly not exhausted his administrative remedies available with the BOP prior to filing his motion, therefore the court will dismiss it without prejudice. *See* Furando v. Ortiz, 2020 WL 1922357 (D.N.J. April 21, 2020) (court dismissed without prejudice the petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus and his age and chronic medical conditions which he alleged put him at high risk if he contracted the virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.); Smith, 2020 WL 2063417, *2 ("Absent a showing of exhaustion, this Court cannot rule on [defendant's] request for compassionate release.") (collecting cases finding that "a failure to satisfy 18 U.S.C. §3582(c)(1)(A)'s filing requirements bars defendants from filing motions for compassionate release, and that the judiciary has no power to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic"). *See also* United States v. Bolze, ---F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tn. May 13, 2020) (court held that "the exhaustion requirement is a prerequisite to the court's exercise of its authority under §3582(c)(1)(A)", and "the Court lacks jurisdiction to reduce a term of imprisonment under §3582(c)(1)(A) if

defendant has not exhausted his administrative remedies …."); United States v. Blevins, 2020 WL 3260098, *2 (S.D. Miss. June 16, 2020) ("The statute [18 U.S.C. §3582(c)(1)(A)] does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise.") (citing United States v. Koons, 2020 WL 1940570, at *3 (W.D.La. Apr. 21, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute."); United States v. Martin, 2020 WL 3065302, at *3 (S.D.Miss. June. 9, 2020)) (district court criminal nos. omitted).

The court also finds that "[t]he circumstances of [Lowe's] case fit squarely within the purposes of the exhaustion requirement." Cordaro, 2020 WL 2084960, *5 (citation omitted). *See also* Early, 2020 WL 2572276, *4 ("The fact remains, however, that Defendant must exhaust his administrative remedies before he may seek relief in this Court.").

Additionally, the court cannot address whether Lowe has demonstrated, as he alleges, that "extraordinary and compelling reasons" justify his compassionate release from prison, since he has not exhausted his administrative remedies with the BOP as required. *See* Greenlove, 2020 WL 3547069, *7 (citations omitted).

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release,

15

especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). The Third Circuit then stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.* See also United States v. Zywotko, 2020 WL 1492900, *2 (M.D.Fl. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. §1B1.13.") (citation omitted).

Finally, to the extent Lowe is deemed as also relying on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.

This court has held that, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." Cruz, 2020 WL 1904476, *4; Cordaro, 2020 WL 2084960, *6-7 ("the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citations omitted). *See also* United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020); United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in

16

home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same); United States v. Williams, 2020 WL 2748287, *1 (E.D.Tenn. May 27, 2020) ("The CARES Act gives decision-making authority to of the Attorney General and the Director of the [BOP]", and "Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.") (citations omitted).

**III.   CONCLUSION**

Based on the foregoing, Lowe's emergency motion for compassionate release to home confinement related to the COVID-19 pandemic, **(Doc. 419)**, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Further, insofar as Lowe is challenging any decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the

court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

      s/*Malachy E. Mannion*
   **MALACHY E. MANNION**
   **United States District Judge**

**Dated: August 5, 2020**
13-102-01